**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

**JOSEPH HOWARD,**

***Plaintiff*,**

**v.** **Case No.: 3:25cv991-MW/MAF**

**FRANK BISIGNANO,**
**Commissioner of Social Security,**

***Defendant*.**
________________________________/

# MEMORANDUM OPINION AND ORDER

This cause is before this Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's application for Supplemental Security Income (SSI), Period of Disability and Disability Insurance Benefits (DIB). After consideration of the record, for the reasons stated below, the decision of the Commissioner is **AFFIRMED**.

## I. Procedural History

Plaintiff protectively filed an application for SSI (Title XVI) and DIB (Title II) benefits on September 16, 2021, alleging disability beginning September 27, 2016. Tr. 10; 209; 213–14; 217–19; [1] ECF No. 13, p. 2; ECF No. 16, p.1. Plaintiff's

[1] References to the record in this case will be to "Tr." followed by the relevant page number.

claim was denied initially on August 18, 2022 (Tr. 75–88); and on reconsideration on October 20, 2023. Tr. 89-106. After a telephonic hearing held on April 24, 2024 (Tr. 44–74), Administrative Law Judge (ALJ) Laura Robinson issued a decision on June 27, 2024, finding that Plaintiff was not disabled. Tr. 10–20. Plaintiff, his counsel (Nick Ortiz), and an impartial vocational expert (VE) (James Cowart) appeared at the hearing. Tr. 10; 44–74. A request for review was filed (Tr. 122), but that request was denied. Tr. 1–6. The ALJ's decision was final action of the Commissioner. Tr. 10–20.

Plaintiff filed his complaint with this Court on July 17, 2025. ECF No. 1. The Commissioner filed the administrative record on September 15, 2025. ECF No. 7. Plaintiff filed a Memorandum in Support of his Complaint on November 28, 2025. ECF No. 13. The Commissioner filed a responsive memorandum in support of the Commissioner's position on January 28, 2026. ECF No. 16. Plaintiff filed a Reply on February 11, 2026. ECF No. 17. This matter is ripe for review.

## II. Issue Presented

In his Complaint, Memorandum in Support, and Reply, Plaintiff raises the following issues:

1. The ALJ's evaluation of the medical opinion evidence of record and Mr. Howard's Residual Functional Capacity (RFC) was not supported by substantial evidence or completed in accordance with applicable agency regulations and policies.

2. The ALJ failed to adequately evaluate the combined impact of the limitations caused by all of Mr. Howard's medically determinable impairments.

3. The ALJ's evaluation of Mr. Howard's testimony and reports regarding his symptoms and limitations was not supported by substantial evidence or in accordance with applicable agency policy and regulations.

ECF No. 13, p. 11-24. As these are the only issues presented, this Court will limit its review of ALJ Robinson's decision and record to these matters.

## III. Legal Standards Guiding Judicial Review

Review of the Commissioner's decision is limited. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1986). Affirmance is required if the decision is supported by substantial evidence in the record and premised upon correct legal principles. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth*, 703 F.2d at 1239; *accord Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).[2]

[2] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he

This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner, *Bloodsworth*, 703 F.2d at 1239, although this Court must scrutinize the entire record, consider evidence detracting from the evidence on which the Commissioner relied, and determine the reasonableness of the factual findings. *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992). Review is deferential, but the reviewing court conducts "an independent review of the record." *Flynn v. Heckler*, 768 F.2d 1273, 1273 (11th Cir. 1985).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). It is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1509 (duration requirement); *Barnhart v. Walton*, 535 U.S. 212, 223–24 (2002).

---

has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

The Commissioner analyzes a claim in five steps, pursuant to 20 C.F.R. § 404.1520(a)(4)(i) –(v):

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4. Does the individual have the residual functional capacity (RFC) to perform work despite limitations and are there any impairments which prevent past relevant work?[3]

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant

[3] An RFC is the most a claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). It is an assessment based upon all the relevant evidence including the claimant's description of his limitations, observations by treating and examining physicians or other persons, and medical records. *Id.* The responsibility for determining a claimant's RFC lies with the ALJ. 20 C.F.R. § 404.1546(c); *see* Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) ("The term '*residual functional capacity assessment*' describes an adjudicator's finding about the ability of an individual to perform work-related activities. The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence."). This Court will apply the SSR in effect when the ALJ rendered her decision. *See generally*, *Bagliere v. Colvin*, No. 1:16-CV-109, 2017 U.S. Dist. LEXIS 8779, at *10-18, (M.D. N.C. Jan. 23, 2017), *adopted*, 2017 U.S. Dist. LEXIS 51917 (M.D. N.C. Feb. 23, 2017).

work. Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work. If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled. If the claimant satisfies this burden of demonstrating he cannot do prior work, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience. *Phillips v. Barnhart*, 357 F.3d 1232, 1237–39 (11th Cir. 2004) (citing 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g)). If the Commissioner carries this burden, the claimant must prove that he cannot perform the work suggested by the Commissioner. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

Plaintiff bears the burden of proving that he is disabled, and consequently, is responsible for producing evidence in support of his claim. *See* 20 C.F.R. § 404.1512(a); *Moore*, 405 F.3d at 1211. As the finder of fact, pursuant to 20 C.F.R. §§ 404.1502(a) and 404.1513(a)(2), the ALJ considers medical opinions from licensed physicians and psychologists and acceptable medical sources. The ALJ is charged with the duty to evaluate all the medical opinions of record and resolve conflicts that might arise. 20 C.F.R. § 404.1527.

## IV. ALJ Robinson's Findings

ALJ Robinson properly articulated and followed the five-step sequential evaluation process for determining disability. *See* 20 CFR § 404.1520(a) and 416.920(a). In doing so, ALJ Robinson made the following findings (finding in bold):

**1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.**

This finding is undisputed. Tr. 12.

**2. The claimant has not engaged in substantial gainful activity since the alleged onset date (20 CFR 404.1571 *et. seq*, and 416.971 *et. seq)*.**

This finding is undisputed. Tr. 13. While Plaintiff reported earnings in 2021, that income did not rise to the level of substantial gainful activity. *Id*.

**3. The claimant has the following severe impairments: status post gunshot wound to the abdomen, depressive disorder, and attention deficit hyperactivity disorder (20 CFR 404.1520(c) 416.920(c)).**

This finding is disputed.

Plaintiff agrees that he has medically determinable impairments that significantly limit his ability to perform basic work activities as required by SSR 85-28. But he disagrees with ALJ Robinson's conclusion that those impairments did not further restrict his ability to perform work-related functions. ECF No. 13, p. 11–23.

**4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526 916.920(d), 916.925 and 416.926).**

This finding is disputed.

ALJ Robinson first concluded that Plaintiff's medical conditions, including his gunshot wound to his abdomen, do not meet or equal any of the criteria of a listed impairment. Tr. 13. No examining or treating source reported that Plaintiff had a listed impairment. *Id*.

ALJ Robinson reviewed the functional areas known as the "paragraph B" criteria and concluded that Plaintiff had no more than a moderate limitation in any of the functional areas. Tr. 13. Plaintiff had a mild limitation with respect to understanding, remembering, or applying information; moderate limitation with respect to interacting with others; moderate limitation as to concentrating, persisting or maintaining pace; and a moderate limitation with respect to adapting or managing oneself. *Id*. ALJ Robinson detailed the medical records and consultants she considered in reaching her conclusion: Dr. DeCubas and Dr. Brown, two state psychological consultants, concluded that Plaintiff had no more than mild mental functional limitations (Tr. 75–81; 90–97; 99–106); Dr. Hagans, another consultative psychologist, opined in June 2022 that Plaintiff had no more than mild mental functional limitations (Tr. 560). Plaintiff had a history of mental health treatment for depression and ADHD, resuming treatment in November 2022 with prescriptions

(Prozac and Vistaril), but no counseling or inpatient treatment. Tr. 13; 573–87. His mental health exams were generally within normal limits. *Id*. As far as activities of daily living, ALJ Robinson noted that Plaintiff lives with his family, cared for his personal needs, prepared simple meals, did household chores, drove, shopped, and watched television. However, he did not like to be around people, did not follow instructions, and could not handle stress or changes to his routine. Tr. 13. ALJ Robinson ultimately concluded that Plaintiff's mental impairments, as a whole, were nonsevere and resulted in no more than a moderate limitation on his ability to perform basic work activities; thus they did not satisfy the "paragraph B" criteria because the impairment did not cause at least two "marked" or one "extreme" limitation. 20 CFR 404.1520a(d)(1); *id*. Plaintiff disputes this finding.

With respect to the "paragraph C" criteria, ALJ Robinson concluded those criteria were not satisfied because there was no evidence of medical treatment, mental health therapy, psychological supports or a highly structured setting that is ongoing and that diminishes the symptoms and signs of Plaintiff's mental disorder along with marginal adjustment. Tr. 14.

**5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except that the claimant can occasionally climb ramps and stairs, and he can never climb ladders, ropes, and scaffolds. The claimant can frequently balance and occasionally stoop, kneel, crouch, and crawl. The claimant can perform simple routine tasks for 2-hour periods with customary breaks over the course of an 8-hour workday. The claimant can tolerate occasional interaction with supervisors and coworkers. He should not perform tasks requiring direct interaction with the public. The claimant can tolerate gradual change in a routine work setting.**

This finding is disputed. ALJ Robinson articulates her obligation to follow the two-step process in determining: (1) whether there is an underlying medically determinable physical or mental impairment that could be expected to produce Plaintiff's pain or other symptoms; and (2) whether the objective evidence supports Plaintiff's allegations relating to the intensity, persistence, or functionally limiting effects of his pain or other symptoms. Tr. 14.

In conducting this review, ALJ Robinson reviewed Plaintiff's subjective complaints as detailed in his responses to multiple questionnaires: gunshot wound to the abdomen, retained bullet fragments, internal organ damage, muscle spasms, weak stomach and core, nausea, ADHD, depression, bipolar disorder, and memory loss. Tr. 15; 307–13; 324–28; 342–47; 364–70. ALJ Robinson concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but she did not believe the medical evidence and other evidence were consistent with Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms. Tr. 15.

ALJ Robinson detailed Plaintiff's medical history: he suffered a gunshot wound with a shotgun in September 2016; he underwent exploratory laparotomy, small bowel resection with anastomosis, Hartman's procedure, and repair of abdominal wall with biologic mesh in September 2016; elective ostomy takedown in February 2017; and treatment for abdominal wall infection in 2017. Tr. 15; 442–546. While Plaintiff retained multiple pellets in his abdomen, he had no further surgery, impatient treatment or emergency room treatment since 2017. *Id*.

Plaintiff sought care from Century Adult Primary Care in October 2022 for abdominal pain, muscle spasms, back pain, lead poisoning relating to the retained bullets, chronic pain and mental health problems. Tr. 15; 588–610. Plaintiff's labs confirmed that Plaintiff had an elevated lead level of 11 in September 2022; normal range is between 1.0 and 3.4. Tr. 15; 589–91; 612. X-rays confirmed the presence of the metallic shotgun pellets, but also confirmed normal lumbar and thoracic spine. Tr. 15. Plaintiff was diagnosed with chronic back pain, generalized abdominal pain and lead toxicity. *Id*. Plaintiff was prescribed gabapentin and Tylenol #3 (narcotic pain medication) and was recommended for monitoring of his lead levels every three months. *Id*.

Plaintiff continued to see his primary care provider, and his exams were largely unchanged. Tr. 15; 588–617; 637–58. Plaintiff was treated with muscle relaxers, nonsteroidal anti-inflammatories, and prescribed pain medications, which

controlled his pain. Tr. 15. Plaintiff's lead levels trended downward toward near normal – 3.8 in December 2022 and 3.5 by March 2023. *Id*. Plaintiff had stable renal and liver function and no objective evidence of any neurocognitive deficits or other limitations secondary to lead poisoning. *Id*.

To account for Plaintiff's impairments and related symptoms, ALJ Robinson limited Plaintiff to light work. Tr. 15. Plaintiff's treatment records, treatment history and imaging confirmed that Plaintiff would be able to perform such work. *Id*. Normal imaging of the abdomen and spine, as well as near normal lead levels after a spike in September 2022 (six years after the gunshot wound) justify the light work and postural limitations proposed in the RFC. Tr. 16.

ALJ Robinson also considered and discussed the examination findings and the relevant opinions. Those are summarized as follows:

> **Dr. Berger** – In June 2022 Dr. Berger performed a consultative examination of Plaintiff. Tr. 547–56. Plaintiff presented as healthy appearing with no apparent discomfort sitting, standing or walking; he had normal gait and was able to walk on toes and heels, squat, tandem walk, and get on and off the examination table; normal range of motion other than reduced range of motion in his lumbar spine on forward flexion; Plaintiff had no spasm of the paraspinous muscles; straight leg raise was negative, and Plaintiff had normal muscle strength, normal grip strength, and normal fine and gross manipulative skills. Dr. Berger concluded that Plaintiff had no limitations sitting, standing, walking, bending, stooping, reaching, handling, lifting, carrying or with memory and understanding. Tr. 16. ALJ Robinson found Dr. Berger's opinion generally persuasive, supported by his examination of Plaintiff, and consistent with Plaintiff's treatment history and records, as well as his diagnostic testing.

**Dr. Chelvan** – Dr. Chelvan completed a Physical Residual Functional Capacity Assessment in which she concluded that Plaintiff could do light work except he can only occasionally climb ladders, ropes, and scaffolds; can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. *Id*. ALJ Robinson found Dr. Chelvan's opinion to be generally persuasive, as it was supported by and consistent with the record and the consultative evaluation. Because of Plaintiff's complaints of abdominal and back pain ALJ Robinson included more restrictive postural limitations in the RFC. *Id*.

**Dr. Haley** – Dr. Haley considered Plaintiff's history of gunshot wound, complaints of back pain, and possible lead toxicity and found Plaintiff did not have a severe physical impairment. Tr. 16; 90–97; 99–106. ALJ Robinson found Dr. Haley's opinion supported by but not consistent with the record, and concluded instead that Plaintiff was limited to the reduced range of light work. Tr. 16.

**Lakeview Center** – Beginning in 2015 Plaintiff received mental health assessment and treatment on an inconsistent basis. Tr. 17; 431–41. He was diagnosed with major depressive disorder and ADHD, was prescribed psychotropic medications, and was discharged at his request in January 2016 in a stable condition. Plaintiff resumed treatment in November 2022, reporting he was having poor mental health and was afraid of people. Tr. 17. However, his mental status exam was essentially normal: he was cooperative and engaged in the interview; there was no psychomotor agitation or retardation; he was alert and fully oriented; his mood was neutral and his affect was appropriate; his thought processes were organized, linear and goal directed; there was no evidence of hallucinations, delusions or paranoia; and Plaintiff's memory was intact and his insight and judgment were intact and appropriate. Plaintiff was started on Prozac and Vistaril, and therapy was recommended. Tr. 17. Plaintiff declined the therapy. Plaintiff continued on his medication regimen, following up every few months for refills. Tr. 17; 570–87; 628–36. He reported he was doing much better since restarting treatment, with some depression and anxiety, particularly when out in public, but with normal mental status exams and no medication side effects. He continues to decline therapy. Plaintiff's RFC was limited to no direct interaction with the public and only occasional interaction with coworkers and supervisors to account for his anxiety. Tr. 17.

**Ms. Crawford, APRN** – As a treating provider at Lakeview, Ms. Crawford completed a Medical Opinion Regarding Ability to do Work-Related Activities (Mental) in which she opined that Plaintiff was unable to meet the competitive standards to perform unskilled work or had no useful ability to perform unskilled work, and would be absent from work more than four days per month. Tr. 17; 618–19. ALJ Robinson did not find the opinion of Ms. Crawford as reflected in the two-page checksheet to be persuasive, as it was not supported by the mental health treatment records, with his normal mental health status reports, or with Plaintiff's stable medication regimen. ALJ Robinson concluded that Ms. Crawford's opinion was largely driven by Plaintiff's subjective complaints as opposed to the record. Plaintiff complained he had ongoing issues with memory, became easily agitated, and was easily distracted; however, Plaintiff's memory was consistently found to be intact, he was not agitated, and there was no evidence of decreased attention or concentration. Tr. 17–18.

**Dr. Hagans** – During a psychological consultative evaluation in June 2022 Plaintiff was appropriately groomed, friendly, and cooperative; his psychomotor activity was unremarkable; his attention, concentration and memory were intact; he had a normal flow of unimpeded thoughts, and the content of his thoughts were logical, cohesive and coherent. Tr. 18; 557–61. He did not appear to respond to internal stimuli and his mood was mildly dysphoric with full and reactive affect. Plaintiff was diagnosed with major depressive disorder and ADHD, but was only mildly impaired in his ability to understand, remember and carry out detailed instructions and in his interaction with the public. He had no impairment in his ability to perform all other mental work-related activities. ALJ Robinson believed Dr. Hagans' opinion was supported by his own examination of Plaintiff, but she did not believe the opinion was fully consistent with the remainder of Plaintiff's mental health records. ALJ Robinson found the opinion to be partially persuasive. Tr. 18

**Dr. DeCubas and Dr. Brown** – ALJ Robinson found Dr. Decubas' opinion (Tr. 76–78) and Dr. Brown's opinion (Tr. 95; 104) that Plaintiff did not have a severe impairment to be somewhat persuasive as partially supported by the medical record. Plaintiff's RFC accounted for this by limiting Plaintiff to a range of unskilled work consistent with the moderate mental function limitations to account for his mental impairments and his loss of concentration due to pain, medication side effects or elevated lead level. Tr. 18.

ALJ Robinson also found the State agency assessments at the initial level of review to not be persuasive as they were not supported by or consistent with the record. *Id*. Ultimately, ALJ Robinson concluded that Plaintiff's depression, ADHD and possible loss of concentration due to pain medication side effects and/or his history of elevated lead level were accounted for in the limitations of the RFC to unskilled work that involved only occasional interaction with supervisors and coworkers but no direct interaction with the public, and gradual changes to his work routine. Tr. 17. No other mental functional limitations were justified in light of Plaintiff's generally normal mental status exams and his psychological consultative evaluation findings. *Id*.

**6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).**

This finding is undisputed. Tr. 18. Plaintiff had some prior experience as a welder, but his earnings were insufficient to constitute gainful activity. Plaintiff had no relevant past work. *Id*.

**7. The claimant was born on August 7, 1977, and was 39 years old, which is defined as a younger individual aged 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).**

This finding is undisputed. *Id*.

**8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).**

This fact is undisputed. *Id*.

**9. Transferability of job skills is not material to the determination because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

This fact is undisputed. *Id*.

**10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969 and 416.969a).**

This fact is disputed. Jim Cowart, the VE, was asked if any occupations exist which Plaintiff could perform based on his age, education, past relevant work experience, and residual functional capacity. The VE responded that Plaintiff could perform the following jobs (Tr. 71–72):

| Position | DOT No. | Rating | Activity | Jobs available |
|---|---|---|---|---|
| marker | 209.587-034 | unskilled | light | 40,000 |
| car checker | 222.387-014 | unskilled | light | 30,000 |
| garment sorter | 222.687-014 | unskilled | light | 15,000 |

ALJ Robinson found the VE testimony consistent with the Dictionary of Occupational Titles, or to be based on the VE's experience in vocational rehabilitation. Tr. 19. Based on that testimony, ALJ Robinson found that Plaintiff could make a successful adjustment to other work that existed in the national economy. Thus, Plaintiff was not disabled. *Id*.

**11. The claimant has not been under a disability, as defined in the Social Security Act, from September 27, 2016, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

This fact is disputed. Plaintiff contends he was disabled, specifically because of his mental impairments and limitations, as well as the impact of exposure to elevated levels of lead in his bloodstream.

## V. Plaintiff's Claims

### The ALJ Evaluation of the Medical Opinion Evidence of Record and Mr. Howard's RFC was not Supported by Substantial Evidence or Completed in Accordance with Applicable Agency Regulations and Policies

Plaintiff contends that ALJ Robinson did not base her mental RFC findings on the medical opinions of record or upon a function-by-function assessment of Mr. Howard's abilities with an explanation of how the non-medical opinion evidence of record supported that assessment. ECF No. 13, p. 12. Having rejected the mental health opinions, Plaintiff contends ALJ Robinson was obligated to provide a function-by-function assessment of the relevant evidence to support the RFC findings. Plaintiff contends that ALJ Robinson failed to do so.

Plaintiff assets that ALJ Robinson's conclusion that Plaintiff had no more than a moderate limitation with respect to the functional areas within the "Paragraph B" criteria does not satisfy this obligation. ECF No. 13, p. 14. Contrary to ALJ Robinson's conclusion that Plaintiff's activities of daily living supported a finding that he was not disabled, Plaintiff contends the evidence actually shows that his

homelife was more unstable: he was staying in a room his mother was using for storage; he contends he was set up to be shot by his mother and he was left to die; he has not driven in a long time; and he struggles to do household chores. ECF No. 13, p. 15; 49–50; 59; 297; 331; 358 652. Plaintiff contends that in the absence of any medical opinion to support ALJ Robinson's mental RFC findings those conclusions are not supported by substantial evidence. ECF No. 13, p. 15.

Plaintiff does not believe this was a harmless error. Plaintiff argues that rejecting Nurse Crawford's restrictive opinion while finding the state agency consultant's opinions "partially" or "somewhat" persuasive was error. *Id*. Nurse Crawford questioned whether Plaintiff had the ability to remain on task in the workplace or to maintain regular attendance necessary to sustain full-time work. *Id*. at 15–16; Tr. 72; 618–19. Plaintiff feels that ALJ Robinson failed to address the supportability and consistency of those opinions. Further, Plaintiff contends relying on the opinions of Drs. Berger, Brown and Hagans could not provide the evidentiary support because of inconsistencies in those reports regarding Plaintiff's memory and reported history:

> **Dr. Hagans** – Plaintiff had no limitation in remembering short and simple instructions, but also no immediate recollection of 1 of 5 words, unable to remember 3 of 5 words after 3 minutes, and to count backwards from 100 to 65. Tr. 559.
>
> Dr. Hagans also noted no history of mental health treatment other than between 2012 and 2016, and no neglect, abuse, or witness trauma in his childhood, but Plaintiff reported he "feels like he has had mental health issues

ever since childhood due to his childhood trauma and abuse" and that he was "Baker Acted at 18" because of parental abuse. Tr. 573–74. Despite this, Dr. Hagans opined that Plaintiff had no observable impairment in his recall of remote autobiographical information. Tr. 559.

**Dr. Berger** – Plaintiff did not have difficulty with recalling events or recent activities (Tr. 553), while inconsistently reporting Plaintiff claimed he had no major surgeries on the same page he reported Plaintiff had bowel resection/colostomy. Tr. 549.

**Dr. Brown** – Reported that Plaintiff had no psych meds, no depression, and no anxiety in October 2023, despite Plaintiff's treatment history, medication, depression, anxiety and PTSD which was documented in February 2023. ECF No. 13, p. 17; 434, 436–37; 438; 573–74; 579–80. Also stated there was no objective evidence of mental health symptoms even though the records dated two months later show he scored a 21 on his PHQ-9.

**Lead Levels** – Plaintiff contends his elevated lead levels were not known by many of the providers, and was dismissed and ignored by Dr. Haley. Tr. 94; 612; 638. Dr. Brown does not mention the elevated lead levels, but instead erroneously concludes that Plaintiff had no mental health prescriptions, no depression, no anxiety, and his complaints of brain fog and memory issues were vague, even though Dr. Berger and Hagan confirmed memory impairments. Tr. 553; 559. Because none of the physicians evaluated Plaintiff's lead poisoning, ALJ Robinson was left to explain away those elevated lead levels. R. 16. Plaintiff rejects that the remoteness of the testing is determinative: A) using logic, the levels trending down implies they would have been higher near the shooting; B) the lead pellets remain; C) calling Plaintiff's lead levels essentially normal is without support; and D) this is a medical determination for which the ALJ is not qualified.

**Nurse Crawford** – ALJ Robinson improperly concluded that Nurse Crawford's opinion is not supported by Plaintiff's treatment records. While it is reported that Plaintiff's memory is consistently intact, that he is not agitated, and that there is no evidence of decreased attention or concentration (Tr. 17–18), before Plaintiff was shot, he quit taking his meds, he was upset at times, he was verbally aggressive, and it was recommended he take anger management classes. Tr. 438. There was also evidence from the other providers (as noted above) that Plaintiff had memory issues. R. 427; 585–86;

632; 652; 656. These issues (memory and focus issues, agitation, and anger issues) were also confirmed by his mother. Tr. 57–58; 67.

Plaintiff contends that the inadequate evaluation of Plaintiff's mental health limitations was not harmless because the VE proposed positions with a reasoning level of 2 or above. ECF No. 13, p. 19. Plaintiff believes a remand is necessary so that Plaintiff's mental health limitations can be incorporated into Plaintiff's RFC.

**The ALJ Failed to Adequately Evaluate the Combined Impact of the Limitations Caused by all of Mr. Howard's Medically Determinable Impairments**

Plaintiff argues that ALJ Robinson failed to consider all of Plaintiff's impairments – both the severe and non-severe – in assessing his RFC. ECF No. 13, p. 20. Specifically, Plaintiff believes ALJ Robinson failed to consider the combined impact of all of his impairments and was erroneously silent as to Plaintiff's muscle spasms, anal leakage, still-embedded lead pellets, documented vitamin deficiencies, elevated lead levels, and lumbago with sciatica on his right side. *Id*. Plaintiff confirmed these problems during his testimony: anxiety related to his spasms and how that impacts his ability to focus and remain on task (Tr. 55; 62–65); difficulty in taking his medication relating to his intestinal tract, constipation, drowsiness and confusion (Tr. 53–55; 352; 590–91; 600; 603; 651–52; 655–56); and issues with his bottom hygiene causing excessive wiping and frequent bathroom breaks (Tr. 324, 327, 331). ECF No. 13, p. 20.

As a result of the failure by ALJ Robinson to address these impairments in Plaintiff's RFC, the hypothetical proffered to the VE was insufficient to address Plaintiff's limitations. *Id*. Further, the examining consultants failed to properly consider Plaintiff's vitamin B12 and D deficiency, which Plaintiff contends would have impacted Plaintiff's depression, memory issues, confusion, fatigue, irritability, muscle weakness and cramps. *Id*. at 21; Tr. 13–17; 595, 600, 603, 707, 614 and 640. According to Plaintiff, no medical expert evaluated these deficiencies, and the ALJ was not qualified to do so; the record should have been developed, especially in light of Plaintiff's limited financial support and his limited ability to obtain comprehensive treatment for his ailments. ECF No. 13, p. 13; Tr. 49; 61–62; 299; 331; 594. This would include Plaintiff's lumbago with sciatica which were the subject of treatment in 2023 and 2024, after the consulting examinations, especially considering Plaintiff's issues with his right side and right leg. Tr. 52–53; 650–58.

According to Plaintiff, this failure by the ALJ to evaluate and consider the combined impact of Plaintiff's severe and non-severe impairments requires a remand. ECF No. 13, p. 21.

**The ALJ's Evaluation of Mr. Howard's Testimony and Reports Regarding His Symptoms and Limitations was not Supported by Substantial Evidence or in Accordance with Applicable Agency Policy and Regulations**

Plaintiff contends that ALJ Robinson failed to properly evaluate Plaintiff's subjective symptoms, including his pain. ECF No. 13, p. 22. ALJ Robinson ignored

Plaintiff's subjective complaints regarding pain, confusion, drowsiness and constipation. Further, ALJ Robinson improperly relied on Plaintiff's activities of daily living during his normal day – provided under circumstances much different from the chaos of the workplace – as evidence that he could function despite his impairments. Finally, Plaintiff questions whether ALJ Robinson considered whether Plaintiff's financial condition prevented him from receiving treatments and care which would have impacted the review of his impairments. Without full access to appropriate care, Plaintiff contends ALJ Robinson failed to fully and fairly develop the record, resulting in an unfavorable decision contrary to reality. Plaintiff argues remand is appropriate to allow a more complete evaluation of the impairments here.

**VI. Commissioner's Response**

**Substantial Evidence Supports the ALJ's Evaluation of the Medical Opinions and the RFC Filing**

The Commissioner contends that ALJ Robinson developed Plaintiff's RFC after reviewing and considering all of Plaintiff's relevant medical records. ECF No. 16, pp. 4–6. In doing that review, ALJ Robinson was not required to give deference to the opinion of Plaintiff's treating providers. *See* 20 CFR §§ 404.1520c(a), 416.920c(a) (2017); *Matos v. Comm'r of Soc. Sec.*, 2022 WL 97144, at *4 (11th Cir. Jan. 10, 2022) (holding that "the new regulatory scheme no longer requires the ALJ to either assign more weight to medical opinions from a claimant's treating source or explain why good cause exists to disregard the treating source's opinion").

Instead, the ALJ considers the supportability, consistency, treatment relationship, specialization and other factors in determining what weight to give to a medical source. 20 CFR §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5) (2017).

According to the Commissioner, ALJ Robinson properly reviewed each of the medical sources:

> **Brandie Crawford, APRN** – Nurse Crawford completed a checklist form which concluded that Plaintiff lacked the mental ability to work related functions necessary to perform unskilled work, including understanding and remembering very short and simple instructions, carrying out very short and simple instructions, maintaining attention for two hour segments, and sustaining a normal routine without special supervision. Tr. 618. She also opined that Plaintiff was unable to interact appropriately with the general public or maintain socially appropriate behavior. Tr. 619. ALJ Robinson found those opinions not persuasive (Tr. 17) as they were not supported by Plaintiff's treatment records that confirm that Plaintiff participated in medication management services but refused counseling (Tr. 17–18; 631), including recommendations from Nurse Crawford that Plaintiff should pursue trauma therapy. Tr. 579; 582; 585; 631; 634. Plaintiff was stable on his medications (Tr. 17; 631; 634) and his mental examinations were generally normal. Tr. 17; 577; 580; 583; 586; 586; 632; 635. ALJ Robinson concluded that Nurse Crawford's opinion was based on Plaintiff's subjective complaints – about memory, agitation, and ease of distraction – rather than on the treatment records, which confirmed that Plaintiff's memory was intact and he was not described as agitated. Tr. 17–18; 577; 580; 583; 586; 632; 635. The Commissioner further contends that Nurse Crawford's opinion was not consistent with the other medical records, including the opinion of Dr. Hagans, a consultative psychological expert. Dr. Hagans reported that Plaintiff was friendly and cooperative, was able to repeat a five digit number (forward) and a three digit number (backwards), count backward by threes from 20, follow instructions on varied tasks without difficulty, and had normal and unimpeded flow of thoughts. He only had trouble counting backwards by 7 from 100 to 65. Tr. 18; 558–59. The Commissioner contends that substantial evidence supports ALJ Robinson's evaluation of Nurse Crawford's opinion. ECF No. 16, p. 9.

**Paul Berger, M.D.** – ALJ Robinson found Dr. Berger's opinion that Plaintiff had no limitations with sitting, standing, walking, bending, stooping, reaching, handling, lifting, carrying, or with memory and understanding to be generally persuasive as it was supported by his examination. Tr. 16. Plaintiff was groomed, appropriately dressed, fully oriented, had good concentration, did not have difficulty recalling recent events and activities, was cooperative and had no objective evidence of severe limitation from ADHD, depression, bipolar or memory loss. Tr. 16; 552–53. Plaintiff had some memory issues – he could not remember 3 objects after 10 minutes and was not able to spell "world" backwards. Tr. 553. Plaintiff's mental health status examinations were largely within normal limits. Tr. 17; 577; 580; 583; 586; 632; 635. The Commissioner argues that ALJ Robinson properly evaluated Dr. Berger's opinion and found it to be generally persuasive. ECF No. 16, p. 10.

**Chad Hagans, M.D.** – following a consultative psychological evaluation in June 2022 Dr. Hagans opined that Plaintiff had only a mild limitation with respect to his ability to understand, remember, and carry out detailed instructions and in interacting with others. Tr. 18; 560. He did not find that Plaintiff was otherwise impaired in his ability to carry out work-related mental activities. *Id*. ALJ Robinson found that opinion to be partially persuasive. Tr. 18. The opinion was supported by Dr. Hagans' examination – Plaintiff was appropriately groomed, was friendly, and was cooperative; he had intact attention, concentration, and memory; he repeated a five digit number forward, and a three digit number backwards; counted backwards by threes from 20; was able to follow instructions on varied tasks with difficulty; he had normal and unimpeded flow of thoughts, as well as logic, cohesive and coherent content; he did not appear to respond to internal stimuli, and had a mildly dysphoric mood with full and reactive Affect. Tr. 18; 559. His only shortcoming was counting backwards from 100 by sevens to 65. Tr. 559. ALJ Robinson also found the opinion was not fully consistent with Plaintiff's whole mental health record, especially given that the record reflects that Plaintiff had unremarkable mental status findings. Tr. 17; 577; 580; 583; 586; 632; 635. The Commissioner argues that ALJ Robinson considered both the supportability and consistency of Dr. Hagans' opinion and found it partially persuasive. Tr. 18; ECF No. 16, p. 11.

**E. Brown**, **Psy.D.** – ALJ Robinson found Dr. Brown's opinion that Plaintiff did not have a severe mental impairment to be somewhat persuasive, as it was partially supported by, but not fully consistent with the record. Tr. 18; 94–95; 103–04. Plaintiff contends that Dr. Brown's opinion could not provide support

> for the ALJ's decision (ECF No. 13, p. 16); the Commissioner agrees. ECF No. 16, p. 12. While Dr. Brown found that Plaintiff did not have a severe mental impairment and did not assess any mental RFC limitations (Tr. 94; 96; 103; 105), ALJ Robinson found that Plaintiff should be limited to a range of unskilled work reflecting moderate mental functional limitations to account for his mental impairments, possible loss of concentration due to pain, medication side effects and elevated lead levels. Tr. 18.

The Commissioner likewise rejected Plaintiff's contention that ALJ Robinson erred in considering evidence relating to Plaintiff's alleged elevated lead levels. ECF No. 13, pp. 17–18; ECF No. 16, pp. 12–13. According to the Commissioner, ALJ Robinson was not required to obtain or rely on a medical expert if the record contains substantial evidence which addresses the issue. Here, there is no question that Plaintiff had an elevated lead level of 11 in September 2022. Tr. 15; 591; 605; 612. But that level decreased to a "near normal/acceptable limit" by March 2023. Tr. 15; 594–95; 604; 608. Instead of ignoring this evidence, ALJ Robinson crafted an RFC that limited Plaintiff to light unskilled work with postural limitations to account for the history of gunshot wound to the abdomen, residual complaints of abdominal and back pain, and a history of lead levels. Tr. 15–17. The Commissioner contends that ALJ Robinson did not need a medical expert to make an informed decision regarding the impact of Plaintiff's lead levels. ECF No. 16, p. 14. A medical opinion provided by a consulting expert or treating physician is just another piece of evidence which should be considered by the ALJ in developing an RFC. *Id*.

While Plaintiff suggests that a function-by-function assessment of Plaintiff's mental RFC finding was required (ECF No. 13, p. 14), the Commissioner contends that ALJ Robinson properly discussed the relevant evidence in accordance with SSR 96-8p and properly found that Plaintiff could perform a reduced range of light work with additional mental limitations. Tr. 14. ALJ Robinson's consideration of the entire record provided sufficient evidentiary support for the assessed RFC.

**The ALJ Properly Considered the Combination of Plaintiff's Impairments in Determining Plaintiff's RFC**

The Commissioner rejects Plaintiff's contention that ALJ Robinson failed to consider the combined effect of Plaintiff's impairments – including both the severe and non-severe. ECF No. 16, p. 19. ALJ Robinson's decision confirms that she considered all of Plaintiff's symptoms. Tr. 14. As a result, the RFC reflects limitations related to both Plaintiff's mental and physical symptoms. Tr. 16–17. There were no other limitations required, and no other objective medical evidence that supported further limitations. Ultimately, ALJ Robinson reviewed the evidence and determined that the alleged intensity, persistence and limiting effects of Plaintiff's symptoms were not consistent with that evidence. Tr. 15.

According to the Commissioner, Plaintiff has, at best, shown that there may be conflicting evidence regarding the impact of Plaintiff's alleged symptoms on his ability to perform work-related services. ECF No. 16, p. 21. Plaintiff's burden is to do more than show there is evidence to support his position; he must show there is a

lack of substantial evidence to support the ALJ's findings. *Id*. Even if there was evidence to support Plaintiff's position, the Commissioner contends that ALJ Robinson has demonstrated that substantial evidence supports the denial of Plaintiff's claim for disability.

**The ALJ Properly Evaluated Plaintiff's Subjective Complaints**

While ALJ Robinson found that Plaintiff had impairments which could cause the symptoms complained of by Plaintiff, she ultimately concluded that the objective evidence did not support the intensity, persistence or limiting effects of the symptoms alleged by Plaintiff. Tr. 15. ALJ Robinson properly reviewed Plaintiff's alleged symptoms and adopted reasonable functional limitations in the RFC to account for them – Plaintiff could perform a reduced range of light work with additional postural and mental functional limitations. Tr. 14.

As noted by the Commissioner, ALJ Robinson detailed Plaintiff's shotgun wound and his treatment thereafter, ultimately noting that Plaintiff's pain was controlled with his prescribed medication. Tr. 15; 472; 477; 507; 591; 617. While Plaintiff reported in October 2022 and January 2023 that his pain was not resolved with his medications (Tr. 600; 605), he ultimately reported that his pain was improved with the use of ACE-Cod and that his pain increased when he did not use it. Tr. 591.

With respect to his other subjective symptoms, Plaintiff's x-rays confirmed no acute findings with respect to his abdomen and normal x-rays of his lower and upper back (Tr. 16; 625–27; 641–43); Plaintiff had no discomfort sitting, standing or walking; had a normal gait, was able to walk on his toes and heels, squat, tandem walk and get on and off the table without assistance; all of this despite his suggestion that sitting was limited because of bad bottom hygiene. Tr. 549–50. He also had no spasm of the paraspinous muscles, his straight leg raise tests were negative; and his muscle strength, grip strength, and fine and gross manipulative skills were all normal. Tr. 551–52. Also, his mental status were within normal limits; he was calm and cooperative; his affect was wide, non-labile and appropriate; he showed good concentration. Tr. 17; 551–53; 577; 580; 583; 586; 632; 635. There was substantial evidence to support ALJ Robinson's findings regarding Plaintiff's subjective complaints. ECF No. 16, p. 19.

## VII. Legal Analysis

### ALJ Robinson Properly Evaluated the Medical and Mental Health Evidence of Record and Developed an Appropriate FRC

Plaintiff contends that ALJ Robinson failed to fully credit any of the medical opinions, finding none of them fully persuasive. ECF No. 13, p. 14. This is inaccurate. ALJ Robinson evaluated each of the opinions and afforded each of them the deference she deemed appropriate, based on her review of the other evidence of record. Instead of rejecting the opinions, she found them to be "generally,"

"partially," "somewhat" or "not" persuasive. See Tr. 16 (finding Dr. Berger's opinion "generally persuasive"), (finding Dr. Chelvan's opinion "generally persuasive") (finding Dr. Haley's opinion "less persuasive"); Tr. 17 (finding Nurse Crawford's opinion not persuasive); Tr. 18 (finding Dr. Hagan's opinion "partially persuasive"; (finding Dr. DeCubas' and Dr. Brown's opinions to be "somewhat persuasive" and "partially supported . . . by the record"). ALJ Robinson was not required to absolutely accept or reject any particular opinion; she was only required to consider the opinion, compare it to the evidence and opinions of record, and give it such deference as she deemed appropriate based on the evidence. The opinions were to be considered along with the other evidence. That is exactly what she did.

Plaintiff has not pointed to any credible evidence other than his own subjective complaints which would support a contrary result. The burden of proving disability always rests with Plaintiff. *See* 20 C.F.R. § 416.912; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). Other than the checklist provided by Nurse Crawford – which ALJ Robinson rejected as "not persuasive" – there were no medical or mental health opinions cited by Plaintiff which would undermine ALJ Robinson's decision. In fact, to conclude that Plaintiff was disabled, ALJ Robinson would have been required to ignore the greater weight of the evidence and the majority of opinions and reach a contrary result despite the evidence of record. That would have been wholly inappropriate.

Because ALJ Robinson reviewed the entire record, and that review is not inaccurate, Plaintiff cannot contend that the evidence at issue should be read differently or given different weight to justify a different decision. ALJ Robinson had a duty to weigh the evidence, resolve material conflicts in testimony, and determine the case accordingly. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). At best, Plaintiff can argue that the evidence in this case was in dispute. Even if that is so, and this Court disagrees with ALJ Robinson's decision and would resolve those disputed factual issues differently, ALJ Robinson's decision must still be affirmed where, as here, it is supported by substantial evidence in the record. *See Baker o/b/o Baker v. Sullivan*, 880 F.2d 319, 321 (11th Cir. 1989). In this case, substantial evidence and proper legal analysis supports ALJ Robinson's decision that Plaintiff was not disabled. The question is not whether this Court would reach a different decision on the same evidence, or whether the evidence here actually preponderates a different result, but, rather, whether there is sufficient evidence here to confirm that substantial evidence supports ALJ Robinson's decision. *Phillips*, 357 F.3d at 1240 n.8 ("[i]f the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it"); *see also Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1314 (11th Cir. 2021). There is no doubt that ALJ Robinson's decision and the RFC she developed are so supported.

**ALJ Robinson Properly Considered the Combined Impact of Plaintiff's Severe and Non-Severe Impairments**

ALJ Robinson was required to consider each alleged impairment singularly as well as the combined effect of those impairments. *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986). The combined effect of impairments must be considered even where the impairments are not individually found to be severe. *Hudson v. Heckler*, 755 F.2d 781, 785 (11th Cir. 1985) (per curiam). Where the ALJ does not comply with these requirements, the disability finding must be reversed and the case remanded. *Gibson*, 779 F.2d at 623. Where the ALJ has provided an exhaustive discussion of the evidence, however, this Court may conclude that the combined effect of a claimant's impairments has been considered. *Jones v. Bowen*, 810 F.2d 1001, 1006 (11th Cir. 1986) (per curiam).

ALJ Robinson's decision reflects a proper consideration of Plaintiff's impairments that are supported by the medical evidence of record. ALJ Robinson concluded at step three that Plaintiff does not have an impairment or combination of impairments that meet or medically equal a listed impairment. Tr. 13. This language has been held sufficient to discharge the ALJ's obligation to consider impairments in combination. *See Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir. 1986) (per curiam) (ALJ properly considered the combined effect of impairments in finding that claimant is "not suffering from any impairment, or a combination of impairments of sufficient severity to prevent him from engaging in any substantial

gainful activity"). Plaintiff's argument that ALJ Robinson disregarded his impairments in combination is rejected.

Plaintiff specifically contends that ALJ Robinson failed to consider Plaintiff's muscle spasms, anal leakage, still-embedded lead pellets, documented vitamin deficiencies, elevated lead levels, and lumbago with sciatica on his right side. ECF No. 13, p. 20. ALJ Robinson specifically addressed those alleged physical impairments in crafting the RFC: Plaintiff was limited to "light work with additional postural restrictions, as set forth in the residual functional capacity, to account for his history of gunshot wounds to the abdomen, residual complaints of abdominal and back pain, and history of elevated lead levels." Tr. 15–16. Likewise, with respect to his mental limitations, ALJ Robinson "limited Plaintiff to unskilled work that involves only occasional interaction with supervisors and coworkers but no direct interaction with the public and gradual change in routine work setting to account for his depression, ADHD, and some possible loss of concentration due to pain, medication side effects, and/or his history of elevated lead level." Tr. 17. There was no error in failing to address Plaintiff's impairments here. There is no basis for remand on this issue.

**ALJ Robinson Properly Addressed Plaintiff's Subjective Symptoms**

Plaintiff contends that ALJ Robinson failed to consider and account for Plaintiff's subjective complaints of physical pain and mental side effects such as

confusion and drowsiness. ECF No. 13, p. 23. The Eleventh Circuit employs a "pain standard" which a claimant must satisfy when attempting to establish disability through his testimony of pain or other subjective symptoms. *Wilson v. Barnhart*, 284 F.3d 1219, 1225–26 (11th Cir. 2002); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Under this "pain standard," a claimant must provide "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson*, 284 F.3d at 1225; *see also Holt*, 921 F.2d at 1223.

As SSR 16-3p explains and 20 C.F.R. § 404.1529 establishes, "subjective symptom evaluation is not an examination of an individual's character," but is instead "an evidence-based analysis of the administrative record to determine whether the nature, intensity, frequency, or severity of an individual's symptoms impact . . . [his] ability to work." SSR 16-3p, 82 Fed. Reg. 49462, at 49463 & n.1 (discussing recommendations from the Administrative Conference of the United States); *see* 20 C.F.R. § 404.1529. "When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief

of symptoms." *Davis v. Astrue*, 287 F. App'x 748, 760 (11th Cir. 2008) (citing 20 C.F.R. § 404.1529(c)(3)). An ALJ, moreover, must "not reject [a claimant's] statements about the intensity and persistence of [the claimant's] pain or other symptoms or about the effect [the claimant's] symptoms have on [the claimant's] ability to work solely because the available objective medical evidence does not substantiate [the claimant's] statements." 20 C.F.R. § 404.1529(c)(2).

When an ALJ evaluates subjective complaints of disabling pain and other impairments and makes clearly articulated credibility findings that are supported by substantial evidence, a reviewing court will not disturb those findings. *See, e.g.*, *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014); *see also* *Landry v. Heckler*, 782 F.2d 1551, 1554 (11th Cir. 1986) (holding that "factual finding of the ALJ must stand" because "choosing between conflicting evidence is a task particularly suited to the fact finder" and a reviewing court "will not disturb such a determination on appeal" (internal quotation omitted)). "[C]redibility determinations are the province of the ALJ." *Moore*, 405 F.3d at 1212 (quoting *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)). If an ALJ rejects a claimant's subjective testimony regarding the character and severity of her symptoms, she "must clearly 'articulate explicit and adequate reasons'" for doing so. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)). The ALJ, however, need not cite nor refer to the

Eleventh Circuit's pain standard, particularly if she cites to 20 C.F.R. § 404.1529 and her findings and analysis make clear that the pain standard has been applied. *See Wilson*, 284 F.3d at 1225-26. The ALJ "need not discuss every piece of evidence if the ALJ's decision is not a broad rejection and there is enough for [a reviewing court] to conclude that the ALJ considered the claimant's medical condition as a whole." *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1277 (11th Cir. 2024).

Here, ALJ Robinson considered Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms and found that they were not entirely consistent with the medical evidence and other evidence in the record. Tr. 14. Because ALJ Robinson credited Plaintiff's subjective reports, she incorporated limitations into the RFC, limiting him to a reduced range of light work with additional postural and mental functional limitations. *Id*.

As to Plaintiff's pain, the evidence confirmed that the pain was controlled with medications. Tr. 15; 591. While there may have been conflicting evidence in that regard, there is no question that Plaintiff confirmed his pain improved when he was properly medicated. Tr. 591. Further, issues relating to his legs and bottom hygiene were, at times, not a continuing issue. As noted by the Commissioner, there were no acute findings with respect to his abdomen and normal x-rays of his lower and upper back (Tr. 16; 625–27; 641–43); Plaintiff had no discomfort sitting, standing or walking; had a normal gait, was able to walk on his toes and heels, squat,

tandem walk and get on and off the table without assistance. Tr. 549–50. He also had no spasm of the paraspinous muscles, his straight leg raise tests were negative; and his muscle strength, grip strength, and fine and gross manipulative skills were all normal. Tr. 551–52.

Also, his mental status was within normal limits; he was calm and cooperative; his effect was wide, non-labile and appropriate; he showed good concentration. Tr. 17; 551–53; 577; 580; 583; 586; 632; 635. The evidence did not support any further limitations in his RFC based on Plaintiff's subjective complaints.

In sum, a review of ALJ Robinson's decision reveals that the ALJ followed the appropriate standards in assessing Plaintiff's reported symptoms and his testimony concerning those symptoms; made a reasonable decision to partially reject Plaintiff's subjective testimony about the intensity, persistence, and limiting effects of his asserted pain and other symptoms; and articulated, in detail, contrary evidence in the record as her reasons for doing so. "[T]he ALJ considered [Plaintiff's] subjective complaints with the record as a whole and adequately explained [her] decision not to fully credit [Plaintiff's] alleged limitations on [his] ability to work." *Raper*, 89 F.4th at 1279. To the extent Plaintiff may be asking this Court to re-weigh the evidence or substitute its opinion for that of the ALJ, this Court cannot do so. *See, e.g.*, *Buckwalter v. Acting Commissioner of Social Security*, 5 F.4th 1315, 1320 (11th Cir. 2021). "If the . . . decision is supported by substantial evidence, this Court

must affirm, even if the proof preponderates against it." *Dyer*, 395 F.3d at 1210 (quoting *Phillips*, 357 F.3d at 1240 n.8). Here, the ALJ applied the correct legal standards when evaluating Plaintiff's subjective accounts of his symptoms and limitations, and the ALJ's decision was supported by substantial evidence.

## VIII. Conclusion

For the reasons stated above, considering the record as a whole, the findings of the ALJ are based upon substantial evidence in the record and the ALJ correctly applied the law. Accordingly, the Clerk is directed to enter judgment stating, "The decision of the Commissioner to deny Plaintiff's application for DIB and SSI Social Security disability benefits is **AFFIRMED**. Plaintiff's Complaint and Memorandum in Support of the Complaint are **DENIED**." The Clerk shall close the file.

**SO ORDERED on September 21, 2026.**

**s/Mark E. Walker**
**United States District Judge**